# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DONNA MERELETTO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 2:09cv699 |
| | ) | **Electronic Filing** |
| SOLAR POWER INDUSTRIES, INC. | ) | |
| | ) | |
| Defendant. | ) | |

### MEMORANDUM OPINION

August 24, 2011

## I. INTRODUCTION

Plaintiff, Donna Mereletto ("Mereletto" or "Plaintiff"), initiated this action by filing a two (2) count Complaint against Defendant, Solar Power Industries, Inc. ("SPI") alleging employment discrimination in violation of the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et seq.* ("ADEA"), Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 ("ADA"), and the Pennsylvania Human Relations Act, 43 PA. STAT. § 951 *et seq.* ("PHRA"). SPI has filed a motion for summary judgment, Plaintiff has responded and the motion is now before the Court.

## II. STATEMENT OF THE CASE

SPI is a manufacturer of solar cells and modules for the photovoltaic industry. Defendant's Statement of Undisputed Material Facts ("Def. SUMF") ¶ 1. Mereletto, a female born July 10, 1957, was employed by SPI from April 14, 2008, until October 1, 2008. Def.

1

SUMF ¶¶ 2 & 3[1]. Mereletto worked as a processing operator/production worker in SPI's Cell Processing and Module Assembly departments. Def. SUMF ¶ 5. Mereletto's duties included handling and inspecting silicon wafers and finished solar cells, as well as panel manufacturing. Def. SUMF ¶ 6.

Throughout Mereletto's employment, SPI maintained an Employee Handbook which Mereletto received and reviewed at the outset of her employment. Def. SUMF ¶¶ 9 & 10. SPI's Employee Handbook also contained the following workplace policies: (1) a Non-Harassment Policy; (2) a Sexual Harassment Policy; (3) a Substance Abuse Policy; and (4) a Workplace Violence Policy. Def. SUMF ¶¶ 11, 12, 13 & 14. In addition, SPI maintained a Drug and Alcohol Policy which Mereletto received and reviewed at the outset of her employment. Def. SUMF ¶¶ 16 & 17. SPI also maintained rules for keeping a clean environment and preventing contamination of solar cells and modules, which included the General Safety & Operating Rules in Building #1. Def. SUMF ¶ 19. Mereletto admits that she received and reviewed the General Safety & Operating Rules in Building #1 at the outset of her employment. Def. SUMF ¶ 20.

On the morning of July 9, 2008, SPI employee Lonnie Rouzzi expressed concern regarding Mereletto's condition to Stephen K. Schaefer ("Schaefer"), a Production Manager. Def. SUMF ¶¶ 8 & 23. Schaefer went to the Module Assembly area to check on Mereletto. Def. SUMF ¶ 23. Schaefer asked Mereletto if she had been drinking, and she indicated she had been drinking beer the previous evening. Def. SUMF ¶ 24. Believing that Mereletto was under the influence of alcohol, Schaefer sent her home for the rest of the day. Def. SUMF ¶¶ 12.

---

[1] Of the eighty-four (84) statements of undisputed material facts set forth by SPI, Mereletto admits all but paragraph numbers 34, 36 57 & 74. *See* Plaintiff's Counter Statement of Undisputed Material Facts.

2

Both SPI's Drug and Alcohol Policy and Substance Abuse Policy prohibit employees from reporting to work or remaining on duty while under the influence of alcohol. Def. SUMF ¶¶ 13 & 18. The Substance Abuse Policy specifically stated that "[a]ny violation of this policy may result in disciplinary action, up to and including discharge." Def. SUMF ¶ 13. Schaefer determined that a three-day suspension without pay was an appropriate sanction for Mereletto's violation of SPI policies. Def. SUMF ¶ 26. Schaefer then informed Mereletto that she was suspended without pay until July 14, 2008. Def. SUMF ¶ 27. Mereletto returned to work on July 14, 2008, and apologized to Schaefer for the July 9 incident. Def. SUMF ¶ 29.

On August 21, 2008, Mereletto was working in Module Assembly in Building #1, when her hair got caught in her necklace. Def. SUMF ¶ 32. While in the Module Assembly area, Mereletto allegedly cut of a lock of her hair. Def. SUMF ¶ 33. Schaefer was informed of the incident and he went to Mereletto's work area to question her. Def. SUMF ¶ 35. Mereletto explained what happened, and she was issued a written warning for violating SPI's efforts to maintain a clean environment. Def. SUMF ¶¶ 36 & 38.

On September 24, 2008, Casie Curcio "(Curcio"), Mereletto's coworker, reported to Dana Corey ("Corey"), an SPI HR Manager, that while transporting wafers between company buidings in Curcio's automobile, Mereletto rubbed Curcio's leg and tried to kiss her. Def. SUMF ¶ 45. Corey, Schaefer and Donald Meyer ("Meyer"), Mereletto's shift supervisor, met with Mereletto regarding Curcio's complaint. Def. SUMF ¶ 47. Though Mereletto denied the charge, Schaefer believed Curcio because he had previously warned Mereletto not to touch other employees. Def. SUMF ¶¶ 48 & 49. Because this was a violation of SPI's Sexual Harassment Policy, and because of other complaints about regarding her performance and unusual behavior, Mereletto was suspended for the remainder of the week. Def. SUMF ¶¶ 39, 41, 42 & 47.

On September 29, 2008, Mereletto was given a Disciplinary Action Form which described the incidents leading to her suspension as: "[u]nwanted sexual advancements, unusual behavior, unsatisfactory work performance." Def. SUMF ¶¶ 50 & 51. At that same time, Schaefer instructed Mereletto not to retaliate against her coworkers. Def. SUMF ¶ 54. Despite such warning, on October 1, 2008, Schaefer observed Mereletto confront Curcio regarding Curcio's allegations against her. Def. SUMF ¶¶ 55 & 56. Schaefer alleged that Mereletto was yelling at Curcio in a threatening manner with her face very close to Curcio's. Def. SUMF ¶ 57.

Schaefer asked Mereletto to step into the hallway outside the Cell Processing area, and reminded Mereletto she had been told not to retaliate against her coworkers. Def. SUMF ¶¶ 59 & 61. While in the hallway, Mereletto stood at the window looking into the Cell Processing area and extended her middle finger toward Curcio. Def. SUMF ¶ 62. Schaefer then terminated Mereletto's employment with SPI for her retaliation against Curcio in violation of SPI's Workplace Violence Policy, Sexual Harassment Policy, and its Standards of Conduct. Def. SUMF ¶¶ 63 & 64.

Mereletto alleges that while employed by SPI she was subjected to discrimination and harassment because of her age, sex and disabilities or perceived disabilities, and was retaliated against for complaining about such discrimination and harassment.

### III. LEGAL STANDARD FOR SUMMARY JUDGMENT

Pursuant to FED. R. CIV. P 56(c), summary judgment shall be granted when there are no genuine issues of material fact in dispute and the movant is entitled to judgment as a matter of law. To support denial of summary judgment, an issue of fact in dispute must be both genuine and material, *i.e.*, one upon which a reasonable fact finder could base a verdict for the

non-moving party and one which is essential to establishing the claim. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). When considering a motion for summary judgment, the court is not permitted to weigh the evidence or to make credibility determinations, but is limited to deciding whether there are any disputed issues and, if there are, whether they are both genuine and material. *Id*. The court's consideration of the facts must be in the light most favorable to the party opposing summary judgment and all reasonable inferences from the facts must be drawn in favor of that party as well. *Whiteland Woods, L.P. v. Township of West Whiteland,* 193 F.3d 177, 180 (3d Cir. 1999), *Tigg Corp. v. Dow Corning Corp.*, 822 F.2d 358, 361 (3d Cir. 1987).

When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In the language of the Rule, the nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial." FED. R. CIV. P 56(e). Further, the nonmoving party cannot rely on unsupported assertions, conclusory allegations, or mere suspicions in attempting to survive a summary judgment motion. *Williams v. Borough of W. Chester*, 891 F.2d 458, 460 (3d Cir.1989) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). The non-moving party must respond "by pointing to sufficient cognizable evidence to create material issues of fact concerning every element as to which the non-moving party will bear the burden of proof at trial." *Simpson v. Kay Jewelers, Div. Of Sterling, Inc.*, 142 F. 3d 639, 643 n. 3 (3d Cir. 1998), *quoting Fuentes v. Perskie*, 32 F.3d 759, 762 n.1 (3d Cir. 1994)[2].

---

[2] In her brief in opposition to the motion for summary judgment, Plaintiff incorrectly states the standard for summary judgment by asserting the standard for a motion to dismiss for failure to state a claim upon which relief may be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## IV. DISCUSSION

### A. Timeliness of Title VII, ADEA and ADA Claims

SPI alleges that Plaintiff's claims are time-barred by the EEOC rule which provides that claims under the ADEA, ADA and Title VII must be filed within ninety (90) days of receipt of the EEOC's right-to-sue. *See* 29 U.S.C. § 626(e); 42 U.S.C. § 2000e-5(f)(1); *Burgh v. Borough Council of Montrose*, 251 F.3d 465, 470 (3d Cir. 2001). Specifically, 42 U.S.C. § 2000e-5(f)(1) provides that an agency "shall so notify the person aggrieved and within ninety days of such notice a civil action may be brought." *Id.* The Third Circuit has construed this provision to mean that the time for filing a complaint begins to run once the plaintiff receives notice of the right to sue. *Seitzinger v. Reading Hosp. and Med. Ctr.*, 165 F.3d 236, 238-239 (3d Cir. 1999); *see also Mosel v. Hills Department Store, Inc.*, 789 F.2d 251 (3d Cir. 1986). The EEOC right-to-sue letter informs a claimant that he or she has ninety (90) days in which to file a complaint. *Id.* at 252-253.

The ninety (90) day period for filing an action in federal district court is treated as a statute of limitations. *See Zipes v. Trans World Airways, Inc.*, 455 U.S. 385, 393 (1982) (likening requirement of timely filing of administrative charge to statute of limitations); *Figueroa v. Buccaneer Hotel Inc.*, 188 F.3d 172, 176 (3d Cir. 1999) (same with respect to time for bringing court action after receipt of right-to-sue letter). The Court of Appeals for the Third Circuit has strictly construed the ninety (90) day period and has held that, in the absence of some equitable basis for tolling, a civil suit filed even one day late is time-barred and may be dismissed. *See Burgh v. Borough Council of Montrose*, 251 F.3d at 470; *Figueroa v. Buccaneer Hotel Inc.*, 188 F.3d at 176.

Equitable tolling is generally appropriate only when "the defendant has actively misled the plaintiff; the plaintiff 'in some extraordinary way' was prevented from asserting her rights; or when the plaintiff timely asserted her rights in the wrong forum." *Seitzinger v. Reading Hosp. and Med. Ctr.*, 165 F.3d 236, 240 (3d Cir. 1999) (citations omitted). Plaintiff bears the burden to show that equitable tolling is warranted. *Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 591 (3d Cir. 2005).

Here, Mereletto filed her Charge of Discrimination with the EEOC in November of 2008. Def. SUMF ¶ 79. The EEOC issued a dismissal and right-to-sue letter on February 27, 2009. Def. SUMF ¶ 80. In accordance with Federal Rule of Civil Procedure 6(e), it is assumed that Mereletto received the right-to-sue letter no later March 2, 2009. *See Baldwin County Welcome Ctr. v. Brown*, 466 U.S. 147, 148 n.1 (1984) (the Court presumes that an EEOC right-to-sue letter dated January 27, 1981 is received on January 30, 1981 in accordance with Fed.R.Civ.P. 6(e)). Rule 6(e) assumes that a party receives a document three days after it is mailed. *See Seitzinger v. Reading Hosp. and Med. Ctr.*, 165 F.3d at 239. Ninety (90) days from March 2, 2009, fell on May 31, 2009, which was a Sunday, therefore Mereletto's was required to file her complaint no later than Monday, June 1, 2009. Plaintiff filed her complaint on June 2, 2009.

Mereletto agrees that she was presumed to receive the right-to-sue letter on March 2, 2009, but then contends that ninety (90) days from such was Sunday, June 1, 2010. *See* Plaintiff's Brief p. 3. Plaintiff is mistaken, June 1 did not fall on a Sunday in either 2010 or 2009. Therefore it is clear that Mereletto filed her complaint outside the statutory ninety (90) day period.

Further, Mereletto did not argue that there was an equitable basis for tolling the statutory ninety (90) day period. Having failed to show that equitable tolling is warranted, and clearly

having filed her complaint outside the statutory ninety (90) day period, Mereletto's claims under the ADEA, ADA and Title VII must be dismissed. Notwithstanding this finding, the Court will briefly address Plaintiff's substantive claims, which would have been dismissed in any event.

B. Claims Under the ADA

The ADA makes it unlawful, *inter alia*, for an employer to discriminate "against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). The plaintiff has the initial burden in an ADA matter of establishing a *prima facie* case. *Olson v. General Elec. Astrospace*, 101 F.3d 947, 951 (3d Cir. 1996); *Newman v. GHS Osteopathic, Inc.*, 60 F.3d 153, 157 (3d Cir. 1995). In order to establish a *prima facie* case of discrimination under the ADA[1], plaintiff must demonstrate that: (1) she is a "qualified individual with a disability" under the ADA; (2) she is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) she has suffered an adverse employment decision as a result of discrimination. *Gaul v. Lucent Technologies, Inc.*, 134 F.3d 576, 580 (3d Cir. 1998)(citing *Shiring v. Runyon*, 90 F.3d 827, 831 (3d Cir. 1996)).

If the plaintiff meets this initial burden, the Court must apply the familiar burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Establishment of a *prima facie* case raises a presumption of unlawful discrimination. *St. Mary's*

---

[1] The elements for a *prima facie* case of disability discrimination under the ADA are essentially identical to those necessary to establish a *prima facie* case under the PHRA. *See Kelly v. Drexel Univ.*, 94 F.3d 102, 105 (3d Cir. 1996). Therefore, the Court's discussion regarding the ADA claim applies equally to Paintiff's PHRA claim.

*Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993). A defendant can overcome that presumption by introducing admissible evidence of non-discriminatory reasons for its actions. *St. Mary's*, 509 U.S. at 507 (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254-55 (1981)). The defendant has only the burden of production, however; it need not prove that its stated reasons "actually motivated its behavior . . . ." *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994).

If the defendant meets its burden, the plaintiff must then "show by a preponderance of the evidence that the employer's explanation [for its actions] is pretextual (thus meeting the plaintiff's burden of persuasion)." *Id.* Plaintiff does not have to prove that an "illegitimate" motive was the sole reason for the employer's decision; she need only prove that it was a determinative factor in her termination. *Fuentes v. Perskie*, 32 F.3d at 764 (citing *Hazen Paper Co. v. Biggins*, 507 U.S. 604 (1993)).

To survive summary judgment at the third stage of the *McDonnell Douglas* analysis, the plaintiff must present sufficient evidence to allow a factfinder to conclude that the employer's non-discriminatory reason was a *post hoc* fabrication, or pretext. *Id.* "[T]he plaintiff must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either: (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Simpson v. Kay Jewelers, Div. of Sterling, Inc.*, 142 F.3d 639, 644 (3d Cir. 1998).

> [T]he plaintiff cannot simply show that the employer's decision was wrong or mistaken . . . Rather, the non-moving plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them "unworthy of credence" and hence infer "that

> the employer did not act for [the asserted] non-discriminatory
> reasons."

*Fuentes v. Perskie*, 32 F.3d at 765 (internal citations omitted).

The ADA defines disability as "(a) a physical or mental impairment that substantially limits one or more major life activities; (2) a record of such impairment; or (c) being regarded as having such an impairment." 42 U.S.C. § 12102(2). Mereletto does not claim she is disabled, but contends that SPI regarded or perceived her as having an alcohol related disability as she was suspended for being under the influence of alcohol while at work. Under the ADA, a person is regarded as impaired when she: "(1) [h]as a physical or mental impairment that does not substantially limit major life activities but is treated by a covered entity as constituting such limitation; (2) [h]as a physical or mental impairment that substantially limits major life activities only as a result of the attitudes of others toward such impairment; or (3) [h]as none of the impairments defined in paragraph (h)(1) or (2) of this section but is treated by a covered entity as having a substantially limiting impairment." 29 C.F.R. § 1630.2(l). Because Plaintiff agrees that she has no impairment as defined by 29 C.F.R. § 1630.2(h), in order to succeed on her claim that she is "regarded as" disabled, she must show that SPI treated her "as having a substantially limiting impairment." 29 C.F.R. § 1630.2(l)(3).

The analysis must focus not on Plaintiff and her actual abilities, "but rather on the reactions and perceptions of the persons interacting or working with her." *Kelly v. Drexel Univ.*, 94 F.3d 102, 109 (3d Cir. 1996). Therefore, Mereletto must demonstrate either: (1) that despite having no impairment at all, SPI erroneously believed that she had an impairment that substantially limited one or more major life activities; or (2) that she had a non-limiting

impairment that SPI mistakenly believed substantially limited one or more major life activities. *See Eshelman v. Agere Sys.*, 554 F.3d 426, 434 (3d Cir. Pa. 2009)(citations omitted).

The relevant inquiry is whether SPI perceived Mereletto as disabled within the meaning of the ADA, not whether she was actually disabled at the time she was terminated from her employment. *Id.* Therefore, Mereletto must establish that SPI believed she was substantially limited in a "major life activity[3]." *Sutton v. United Air Lines, Inc.*, 527 U.S. at 490-491. In this instance, Mereletto has failed to direct this Court to sufficient evidence from which a jury could reasonably conclude that SPI perceived her to be substantially limited in a major life activity. Mereletto merely contends that she was suspended because she was regarded as being under the influence of alcohol. Mereletto, however, acknowledges that SPI had an alcohol and drug policy in place at the time. Moreover, Mereletto has made no argument and presents no evidence that SPI regarded her as an alcoholic, or that SPI regarded her as limited in a major life activity because of such alcoholism.

Mereletto also directs the Court to the haircutting incident which she contends made her appear "unstable, erratic and to have a mental/perceived (sic) disability." Mereletto however fails to direct this Court to any evidence that SPI believed she was substantially limited one or more major life activities. Clearly, Mereletto has failed to establish that she is a "qualified individual with a disability" under the ADA. Even if this Court could find that Mereletto has established a *prima facie* case in this instance, SPI has introduced admissible evidence of non-discriminatory reasons for her termination. Though Mereletto concludes that SPI's reasons were pretextural, she

---

[3] Major life activities, left undefined by the statute, have been defined by the Equal Employment Opportunity Commission as "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." *Tice v. Centre Area Trans. Auth.*, 247 F.3d 506, 512 (3d Cir. 2001) (quoting 29 C.F.R. § 1630(2)(i)).

points to no evidence from which a factfinder could reasonably "either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Simpson v. Kay Jewelers, Div. of Sterling, Inc.*, 142 F.3d at 644. Having failed to establish a *prima facie* case of discrimination under the ADA, judgment will be granted for SPI and against Mereletto on her disability discrimination claim. Having found that she was neither disabled nor regarded as disabled, Mereletto has no cause of action under the ADA's anti-retaliation provision.

### C. Claims of Sex and/or Age Based Hostile Work Environment

Hostile work environment harassment occurs when unwelcome discriminatory conduct, in this case sexual or age-based, unreasonably interferes with a person's performance or creates an intimidating, hostile, or offensive working environment. *Meritor Savs. Bank FSB v. Vinson*, 477 U.S. 57, 65 (1986) (quoting 29 C.F.R. § 1604.11(a)(3). In order to establish that she was subjected to a hostile work environment in violation of either Title VII or the ADEA[4], Mereletto must establish: (1) that she suffered intentional discrimination because of her sex, (2) that the discrimination was severe or pervasive, (3) that the discrimination detrimentally affected her; (4) that the discrimination would detrimentally affect a reasonable person in like circumstances, and (5) that a basis for employer liability is present. *See Jensen v. Potter*, 435 F.3d 444, 449 (3d Cir. 2006), *overruled in part on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006). Finding that Plaintiff cannot satisfy either the first or second element necessary to show hostile work environment, Mereletto's claims must fail.

---

[4] The provisions of the PHRA are typically construed in the same manner as the corresponding federal antidiscrimination provisions. *Kelly v. Drexel Univ.*, 94 F.3d 102, 105 (3d Cir. 1996).

In explaining the first element, the United States Supreme Court has stated: "The critical issue . . . is whether members of one [protected class] are exposed to disadvantageous terms or conditions of employment to which members of the other [nonprotected class(es)] are not exposed." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 25 (1993) (Ginsburg, J., concurring)). With regard to Title VII, the Court further clarified that workplace harassment is not automatically sex discrimination because "the words used have sexual content or connotations." *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998).

The comments related to age that Mereletto complains of are:

> "[P]eouple told me I looked old with [my hair] up, wear it down." Plaintiff's Deposition ("Pl. Depo.") p. 51;
>
> "One of the girls . . . one time says (sic) get rid of the bun. Then it was get rid of the pony tail. It makes you look trying to look young, trying to look younger than your age. Pl. Depo. p. 65; and,
>
> Two (2) addition references regarding Mereletto wearing her hair in a bun and looking old, and wearing her hair down and trying to look young. Pl. Depo. pp. 66 & 67.

The remaining conduct and/or comments which Mereletto contends were harassing are:

> When she first started at SPI, no one was very friendly to her;
>
> Some employees wore T-shirts that contained the following verbage: "asshole university, smart ass university, bite me, eat me, annoying the whole world one person at a time."
>
> A coworker, Rae Ann Poroda ("Poroda"), once stated " I'm going home and get lucky with my husband tonight."
>
> Poroda talked about taking Vicodin at work and smoking a joint at home.
>
> Poroda often told dirty jokes and "made comments all the time." A coworker mentioned she was coming to work early so she could get ahead in her work, and Poroda said "Oh, head you're coming in to give somebody head."

> Poroda once told Mereletto "Don't look at me. Don't ever look at me."[5]

Def. SUMF ¶¶ 67 & 68.

The above conduct and/or comments do not support a hostile work environment claim because such bad behavior cannot be characterized as a "disadvantageous term or condition of employment" as most of it was not directed specifically at Mereletto. Moreover, the alleged harassing conduct lacks the requisite gender or age based discriminatory animus. Mereletto has failed to establish the first element of a hostile work environment claim that she suffered intentional discrimination because of her age or sex.

To determine whether the comments were severe or pervasive, a court must evaluate "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating or a mere offensive utterance; and whether it unreasonably interferes with the employee's work performance." *Faragher v. City of Boca Raton*, 524 U.S. 775, 787-788 (1998). The harassment "must be so severe or pervasive that it alters the conditions of the victim's employment and creates an abusive environment." *Weston v. Pennsylvania*, 251 F.3d 420, 426 (3d Cir. 2001). Here, the comments were infrequent, neither physically threatening nor humiliating, and Mereletto has not shown how the comments affected her work performance. *See Racicot v. Wal-Mart Stores, Inc.*, 414 F.3d 675, 678 (7th Cir. 2005) (isolated comments about Racicot's age such as she "shouldn't be working at [her] age" were not pervasive enough to create an objectively hostile work environment). The Court finds that Mereletto has failed to proffer sufficient evidence to establish that the alleged harassing conduct was severe or

---

[5] This is the only comment that Mereletto complained of to SPI. She mentioned it to Meyer, but when asked if she wanted him to speak to Poroda about the comment, Mereletto declined. Def. SUMF ¶¶ 68-70.

14

pervasive. Mereletto, therefore, has failed to present sufficient evidence to support her hostile work environment claims, and the Court will enter summary judgment for SPI and against Mereletto on such claims.

### D. Retaliation Under the PHRA, the ADEA and Title VII

Mereletto contends that she was retaliated against by her coworkers, in the form of additional harassment, because she complained to Meyer about their harassing conduct towards her. An employer may be liable for retaliatory harassment perpetrated by an employee's co-workers only if the *prima facie* case is satisfied and if there is a basis for employer liability for the coworker's conduct. *Jensen v. Potter*, 435 F.3d at 449. "When coworkers are the perpetrators [of the harassment], the plaintiff must prove employer liability using traditional agency principles." *Id.* at 452. There is a basis for liability where supervisors "knew or should have known about the [co-worker] harassment, but failed to take prompt and adequate remedial action" to stop the abuse. *Id.* at 453.

Here, Mereletto is unable to show a *prima facie* case of retaliation. To prevail, she must direct this Court to evidence that there was a causal connection between her alleged participation in protected activity, her complaints with regard to her coworkers conduct, and her allegations regarding additional harassment. Mereletto has failed to identify the required evidence. Moreover, Mereletto made only one complaint, and declined her supervisor's offer to speak to the alleged harasser. Therefore, she is also unable to show that SPI had notice or constructive notice of any harassing conduct, and that it failed to take remedial action. Mereletto's retaliation claim fails as well.

## V. CONCLUSION

Based upon the foregoing, SPI's motion for summary judgment shall be granted. An appropriate order follows.

s/ David Stewart Cercone  
David Stewart Cercone  
United States District Judge

cc: Richard P. Kimmins, Esquire  
Robert B. Cottington, Esquire  
Jessi D. Herman, Esquire

(*Via CM/ECF Electronic Mail*)